Alan FLICK, Lester H. Bausman, Jr., Michael J. Houtz, Curvin T. Kraft, Kenneth J. Peifer, Norman Renier, Marilyn A. Sandell, James Spells, Jr., Thomas Harsch, Francis X. Weber, James Knaub, Kenneth Border, Jr., and Jeffrey L. Dressel, Appellants,

v.

**BORG–WARNER CORPORATION, Appellee.**

No. 89–5323.

United States Court of Appeals, Third Circuit.

Argued Sept. 6, 1989.

Decided Dec. 19, 1989.

Rehearing and Rehearing In Banc Denied Jan. 24, 1990.

Gerald J. Williams (argued), Slap, Williams & Cuker, Philadelphia, Pa., for appellants.

Mark A. Casciari (argued), Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for appellee.

Before BECKER, COWEN, and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

The district court ruled that the terms of a revised severance plan did not grant plaintiff employees benefits on the termination of their services. On appeal, plaintiffs for the first time assert that defendant could not revise its original plan because it had failed to prove the existence of a provision permitting amendments. Because plaintiffs did not raise this issue in the district court, we decline to consider it here. On those issues properly presented to us, we affirm the summary judgments for defendant.

Plaintiffs are former employees of the defendant's Transportation Services Division. Following the sale of the Division, plaintiffs brought this suit alleging violations of ERISA. After submissions on stipulated issues and facts, the district court entered summary judgment for defendant and denied the plaintiffs' motion for partial summary judgment. Plaintiffs appeal.

Beginning at the close of 1985, or early 1986, Transportation Services instituted a severance policy dubbed "Transitional Income Plan" (TIP), an employee welfare plan under ERISA, 29 U.S.C. § 1002(1), (3). The terms of the Plan did provide benefits for a number of weeks after defined cessations of employment but did not explicitly grant or deny benefits to a terminated employee who was offered a new position by a purchaser of the entire Division.

On May 8, 1987 defendant revised the Plan to provide for payment of benefits upon "[a] divesture, sale or transfer of all or a portion of Transportation Services wherein the employee is not offered employment with the purchaser." Defendant communicated this amendment to Division employees beginning on May 16 through a general letter, a series of meetings, and oral and written question and answer programs.

Defendant sold Transportation Services Division to the North American Van Lines (Van Lines) on July 31, 1987. Two weeks before completing the sale, Van Lines offered employment to most Transportation Services employees, including all plaintiffs. Some, but not all, of the plaintiffs accepted the offers. In some instances Van Lines offered wages lower than those previously paid by Transportation Services. All the plaintiffs' employment with Transportation Services ended on the date of the sale.

As provided by TIP, Division employees who were not offered employment by Van Lines received severance payments, and others whose employment with Van Lines was shorter than the number of weeks that TIP benefits could be paid were given benefits on a pro rata basis.

The parties submitted motions for summary judgment on stipulated issues and facts. The district court rejected the plaintiffs' contention that any re-employment offer must be "reasonable," and declined to graft that qualification onto TIP. The court also concluded that defendant had not violated any fiduciary duty in amending the original TIP and that the company had not treated similarly situated employees in a disparate fashion.

In their motion for partial summary judgment, plaintiffs asserted that defendant had violated the disclosure provision of ERISA. In letters dated December 7 and 14, 1987, plaintiffs asked defendant to produce a copy of TIP and an explanation for the denial of benefits. Defendant failed to respond until March 17, 1988.

The district court refused to assess civil penalties, reasoning that plaintiffs were not "participants" under ERISA, and consequently, were not entitled to invoke the

penalty provision. In response to the plaintiffs' contention that some of them had been deprived of vacation pay, the court denied relief, emphasizing that Van Lines and defendant had paid plaintiffs the full amount of their claims.

On appeal plaintiffs contend that in revising TIP defendant breached its fiduciary duty to employees entitled to benefits under the original plan. Plaintiffs also argue that defendant cannot show a reservation of a right to modify the severance plan's terms. Plaintiffs further insist that the district court erroneously denied civil penalties for the defendant's failure to timely disclose information and improperly rejected claims for direct payment of vacation pay.

Defendant disputes the plaintiffs' claim of entitlement to benefits under the original TIP and also challenges assertions that plaintiffs were unaware of TIP's terms before the letter of December 1987.

At oral argument, this Court questioned counsel about whether the terms of the original TIP permitted defendants unilaterally to revise the eligibility requirements. The parties submitted additional briefing to the Court on this issue and we will address it first, focusing on whether plaintiffs raised the point in the district court.

We have stated on numerous occasions that in the absence of special circumstances, such as a change in the law, we will not consider on appeal an issue that the parties failed to present to the district court. *See Halderman v. Pennhurst State School & Hosp.*, 673 F.2d 628, 639 (3d Cir.1982) (in banc) (citing *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976)), *cert. denied*, 465 U.S. 1038, 104 S.Ct. 1315, 79 L.Ed.2d 712 (1984); *East Coast Tender Serv., Inc. v. Robert F. Winzinger, Inc.*, 759 F.2d 280, 284 (3d Cir. 1985). No special circumstances have been presented here.

■ Our review of the district court record shows that plaintiffs failed to raise the issue, and as a result, the district judge did not address it. As noted earlier, the parties submitted their motions on stipulated facts and issues and agreed that the precise points in dispute were:

"A. Whether the defendant breached the terms and conditions of TIP, in violation of ERISA, by not making TIP payments to the plaintiffs.

B. Whether defendant's failure to respond to plaintiffs' attorney's December 7, 1987 letter within the thirty day period noted in ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), entitles plaintiffs to any relief under that section.

C. Whether defendant is legally required to pay [vacation pay]...."

In their brief in the district court opposing the defendant's motion for a summary judgment, plaintiffs called the judge's attention to their contentions that the "original TIP" was never provided to them, the written "revision" was not supplied until legal action was instituted, and defendant had made TIP payments in a manner inconsistent with the "revision." Plaintiffs' Response To Defendant's Motion For Summary Judgment at 2. In the single reference to alteration of the original TIP, the plaintiffs' district court brief reads:

"Defendant argues that it had the absolute right to alter its severance plan so as to deny benefits to terminated employees who were 'offered' employment by the purchaser, regardless of the reasonableness of the 'offer.' (the majority of the plaintiffs in the case at bar rejected offers from the purchaser, and the parties agreed that these offers would have entailed reductions in compensation). Even if this were so, it is undisputed that defendants did not apply the 'revised plan' in this manner." *Id.* at 3.

The brief then discusses payments made to named employees and continues,

"[t]he Court of Appeals in *Bruch, supra,* made it clear that employee benefit plans are not to be treated as 'gratuities.' Rather, they are subject to analysis according to contract principles. *Id.* at 136–141. [citing *Bruch v. Firestone Tire and Rubber*, 828 F.2d 134 (3d Cir. 1987)]. In the case at bar, it is clear that plaintiffs are entitled to establish at a plenary trial the proper interpretation

of TIP, and whether defendant breached its fiduciary duty under ERISA by refusing to pay benefits to some employees while paying them to others in the same situation." Plaintiffs' Response at 4.

The brief further commented that the written "revision" was not supplied until after the sale and the original plan, never filed or disclosed, was "lost." *Id.* at 4–5.

Nowhere in their brief do plaintiffs contend, as they now do on appeal, that defendant must show it had reserved the right to change the terms of the original TIP. Nor does any reference appear either in the plaintiffs' brief in support of their motion for partial summary judgment, or indeed, in the complaint itself. Nor does the brief cite any case holding that an employer may not unilaterally change the conditions of a severance plan.

In its memorandum opinion, the district court concluded that an employer does not owe its employees a fiduciary duty when it amends or abolishes a severance benefit plan, citing *Young v. Standard Oil (Indiana)*, 849 F.2d 1039, 1045 (7th Cir.), *cert. denied,* — U.S. — , 109 S.Ct. 529, 102 L.Ed.2d 561 (1988). We reached an analogous result in a case where the employer refused to permit early retirement, although a plan existed to provide such benefits when it was in the best interest of the company to do so. *See Hlinka v. Bethlehem Steel Co.*, 863 F.2d 279 (3d Cir.1988). *See also Trenton v. Scott Paper Co.*, 832 F.2d 806 (3d Cir.1987), *cert. denied,* 485 U.S. 1022, 108 S.Ct. 1576, 99 L.Ed.2d 891 (1988).

What plaintiffs are urging on this appeal, however, is not merely a breach of fiduciary duty by the employer acting in its own interest in interpreting a contract, but rather a breach of contract by defendant qua employer. Clearly, plaintiffs did not raise this theory in the district court and we will not entertain that issue on this appeal. We therefore need not determine whether such a breach of contract action is preempted by ERISA. *See Pane v. RCA Corp.*, 868 F.2d 631, 635 (3d Cir.1989); *Gilbert v. Burlington Indus., Inc.*, 765 F.2d 320 (2d Cir.1985), *aff'd mem.*, 477 U.S. 901,

106 S.Ct. 3267, 91 L.Ed.2d 558 (1986). *Cf. Ft. Halifax Packing Co. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) (state statute requiring single severance payment not preempted).

The thrust of the plaintiffs' contention in the district court was that they were entitled to benefits under the terms of the revised TIP. They did not rely upon provisions of the original TIP or the defendant's failure to reserve the right to amend that agreement. That point is convincingly demonstrated by the fact that plaintiffs did not oppose the defendant's motion for summary judgment by asserting that discovery was needed to establish the terms of the original TIP.

■ It is elementary that the loss of a copy of a document does not foreclose establishing its contents through the testimony of the draftsman, those who read the plan, or others who might have knowledge of its provisions. Plaintiffs chose not to pursue this course of action, but were content to have the record reflect, without objection, that the original plan was "lost." Having decided not to invoke available methods to establish the terms of the plan in the district court, plaintiffs may not assert a violation of the agreement for the first time on appeal.

The issues properly presented to this Court on appeal require but brief comment. After a review of the stipulated facts we are persuaded that the district court correctly analyzed the record in determining that defendant did not make severance payments to individuals similarly situated to plaintiffs.

■ The district court denied civil penalties in this case for the defendant's alleged delay in responding to requests for information on the ground that plaintiffs were not "participants," and thus, not within the purview of the statutory provision. The district court's ruling was consistent with the Supreme Court's definition of "participant" in *Firestone Tire & Rubber Co. v. Bruch,* — U.S. — , 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Van Lines offered plaintiffs employment and plaintiffs there-

by became ineligible to receive benefits under the terms of the Plan. They, therefore, were not "participants" under ERISA.

■ The district court properly rejected the plaintiffs' claims for vacation pay. They have, in fact, received all of their vacation pay—part directly from defendant and the remainder from Van Lines as per the purchase agreement. Having received full compensation, plaintiffs have no cognizable claim for any additional payment.

The judgment of the district court will be affirmed.

BECKER, Circuit Judge, concurring in part and dissenting in part.

I agree with the majority that Borg–Warner is entitled to summary judgment on the plaintiffs' claims for vacation benefits. I agree further that Borg–Warner is entitled to summary judgment on the question whether benefits must be paid under the terms of the *revised* TIP. However, without the precise terms of the *original* TIP, I cannot determine whether the revised or the original TIP is controlling, or whether denial of benefits to these plaintiffs would be improper under the original TIP. I conclude, therefore, that summary judgment for Borg–Warner on the TIP claim is inappropriate. My resolution of the TIP claim leads me to conclude further that summary judgment is also inappropriate as to the plaintiffs' claim for civil penalties arising out of Borg–Warner's tardy response to their request for information about TIP. Before discussing the merits of these two claims, however, I must first address the threshold question of what the plaintiffs did, or did not, raise in the district court.

## I.

The majority does not fully address the TIP claim because it concludes that the plaintiffs failed to raise in the district court several theories they now advance on appeal. The plaintiffs' brief in this court contains four salient points regarding the TIP claim: (1) the question whether plaintiffs are entitled to benefits under the revised TIP must go to a jury;[1] (2) Borg–Warner owed its employees a fiduciary duty of loyalty (which it violated) in deciding whether to revise TIP;[2] (3) Borg–Warner violated trust and contract principles incorporated into ERISA under cases like *Firestone Tire & Rubber Co. v. Bruch,* —— U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), when it decided to revise TIP;[3] and (4) plaintiffs cannot be held responsible for their inability to prove critical elements of their case relating to the original TIP in light of Borg–Warner's sundry ERISA disclosure violations.[4] I agree with the majority insofar as it rejects the first two propositions. However, the majority refuses to address the last two assertions on the ground that the plaintiffs failed to raise them before the district court. I disagree.

The TIP claim was stipulated to the district court as follows:

Whether the defendant breached the terms and conditions of TIP, in violation of ERISA, by not making TIP payments to the plaintiffs.

Nothing in this stipulated issue limits the court's inquiry to the revised TIP; therefore, to decide the stipulated issue correctly, the district court had to determine whether the original or the revised TIP controlled the plaintiffs' claims for benefits.[5] Moreover, nothing in the stipulated issue invokes any specific theory as to *why* Borg–Warner might have acted improperly in revising the TIP.

One possible theory for the plaintiffs—no more embedded in the stipulated issue than any other—is that ERISA imposes a fiduciary duty of loyalty to employees on an employer deciding whether to amend ERISA–covered welfare plans. The majori-

---

1. *See* Appellant's Br. at 15–18.

2. *See id.* at 6–10.

3. *See id.* at 11–13.

4. *See id.* at 14–15.

5. Alternatively, the court might have mooted this question by determining that application of either the original or the revised TIP would yield the same result. As explained below, making *either* determination is impossible under the circumstances without the original TIP itself.

ty reviews this claim and rejects it, a conclusion with which I agree. The proposition that Borg–Warner's power to revise TIP is not limited by any such fiduciary duty, however, leaves open the possibility that some *other* legal rules—for example, principles of trust or contract law—restrict the amendability of TIP. Concluding that there is no fiduciary duty, therefore, is plainly insufficient to decide the question of which TIP governs, a point clearly recognized by the district court.

The majority characterizes the district court's opinion as having held only "that an employer does not owe its employees a fiduciary duty when it amends or abolishes a severance benefit plan." *Ante* at 288. The district court, however, endorsed a much broader proposition, holding that "a decision to amend or abolish such a plan is not reviewable." Dist.Ct.Op. at 6.[6] In other words, neither fiduciary nor trust nor contract nor any other legal principles provide judicially enforceable limitations on an employer's power to amend ERISA-covered severance plans. This broader proposition enabled the district court to conclude—without reference to the terms of the original TIP—that the revised TIP was controlling. *See* Dist.Ct.Op. at 7. Such an inference would be impossible from the majority's premise about fiduciary duties alone, however, because trust or contract principles, if applicable, plainly make the question of TIP's amendability turn on the terms of the original TIP itself. *See infra* at 290–92.

It is true, as the majority points out, that the plaintiffs' briefs in the district court focused on their fiduciary duty argument. However, the plaintiffs also mentioned a contract theory, which the majority itself quotes.[7] Moreover, nothing in the issue formally stipulated to the district court— "[w]hether the defendant breached the terms and conditions of TIP"—suggests limiting the inquiry into the amendability of the original TIP to the narrow fiduciary duty question. Finally, as noted above, the district court itself recognized the need to venture far beyond that question in order to decide the TIP claim. Under these circumstances, I cannot agree with the majority that the plaintiffs may not present to us all their arguments about the amendability and applicability of the original TIP, which plainly bear on the question that was actually stipulated.

I must therefore address all of the plaintiffs' contentions because if I reviewed but nonetheless rejected each of them, I would then be obliged to concur in the majority's judgment, rather than to dissent from it.

## II.

### A.

ERISA created a variety of substantive restrictions, disclosure requirements, and remedial provisions "to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983). One such remedial provision is section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), which provides an express right of action "by a participant or beneficiary ... to recover benefits due to him under the terms of [an ERISA-covered] plan." ERISA authorizes courts to develop "a federal common law of rights and obligations under ERISA-covered plans." *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987).

In *Firestone Tire & Rubber Co. v. Bruch*, —— U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held

---

**6.** As the majority notes, the district court relied heavily on *Young v. Standard Oil (Indiana)*, 849 F.2d 1039 (7th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 529, 102 L.Ed.2d 561 (1988). *Young* did state that "an employer does not owe its employees a fiduciary duty when it amends or abolishes a severance plan." *Id.* at 1045. However, in language quoted by the district court, *Young* also endorsed the much broader proposition that "[a]n employer may unilaterally amend or eliminate a severance plan without violating ERISA." *Id.*

**7.** *See ante* at 287 ("'[E]mployee benefit plans are ... subject to analysis according to contract principles.'" (quoting Plaintiffs' Response to Defendant's Motion for Summary Judgment at 4)).

that district courts reviewing denials of benefits challenged under section 502(a)(1)(B) must afford no deference to an administrator's or a trustee's interpretation of the relevant plan, unless the plan expressly provides otherwise. The Court's analysis began with the proposition that "ERISA abounds with the language and terminology of trust law." *Id.* 109 S.Ct. at 954. Therefore, the Court felt "guided by principles of trust law" in general and the *Restatement (Second) of Trusts* in particular as it began developing a common law to flesh out section 502(a)(1)(B). *See id.* at 954–57.

I believe that the *Bruch* Court's approach is entirely appropriate, if not controlling, in the present context. Under trust law, Borg–Warner's power to revise TIP depended entirely on the extent to which the "trust" created by the original TIP was "revocable" by later amendment or revision. Settlors, of course, can create trusts amendable or revocable at their will. However, "the settlor cannot modify the trust if by the terms of the trust he did not reserve a power of modification." *Restatement (Second) of Trusts* § 331 (1959).[8] Thus, under the trust analogy suggested (if not required) by *Bruch,* Borg–Warner could revise TIP only if it had expressly reserved the power to do so in the original TIP. This conclusion is strengthened by

section 402(b)(3) of ERISA, which requires every employee benefit plan to "provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan." 29 U.S.C. § 1102(b)(3). Section 402(b)(3) is sensibly read as ERISA's analog of *Restatement* section 331: both provisions require an amendment power to be expressly reserved, or else lost.[9]

Here, as well as in *Bruch,* the trust analogy is faithful to two overarching principles of ERISA. On the one hand, ERISA was enacted "to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw,* 463 U.S. at 90, 103 S.Ct. at 2896. On the other hand, nothing in ERISA "direct[s] ... employers as to what benefits to grant their employees." *Hlinka v. Bethlehem Steel Corp.,* 863 F.2d 279, 283 (3d Cir.1989). Trust law honors both these principles: whether the parties are setting a standard of judicial review for denials of benefits (as in *Bruch* ) or defining the scope of an employer's unilateral amendment power (as here), clearly expressed intentions govern (even if pro-employer), but silence or ambiguity is construed in favor of the employee participants.[10]

Borg–Warner argues that trust principles do not apply in this case because TIP was an unfunded general asset plan, not a

---

**8.** Sections 332 and 333 of the *Restatement* provide various narrow exceptions (for example, for fraud, duress, undue influence, or mistake) to the general rule of section 331, none of which is implicated in this case.

**9.** I do not suggest that a violation of section 402(b)(3) would require an employer to maintain the same employee welfare plan in perpetuity. For example, an employee who joins a company after a welfare plan has been amended can hardly assert a legitimate claim to receive benefits as provided in the unamended plan. Moreover, an announced intention to amend a plan at some sufficiently distant future date might reduce the injury to present workers' expectation or reliance interests sufficiently to justify the amendment, especially in light of Congress's determination that only pension benefits must vest. *See* ERISA § 201(1), 29 U.S.C. § 1051(1) (exempting welfare plans from ERISA's vesting requirements). This case, however, involves an amendment that was applicable to then-current employees, effective as soon

as it was announced, and intentionally designed to foreclose claims for benefits that might otherwise have arisen less than three months after the adoption of the amendment. Under *these* circumstances, I believe that an employer's unilateral decision to amend a severance plan is invalid unless a unilateral amendment power was expressly reserved in the plan itself.

**10.** This discussion concerns primarily employee welfare plans, which are protected by disclosure requirements, *see generally* ERISA §§ 101–111, 29 U.S.C. §§ 1021–1031, and by fiduciary duties that govern their administration, *see generally id.* §§ 401–414, 29 U.S.C. §§ 1101–1114. Employee pension plans, by contrast, have stringent substantive requirements that parties cannot contract out of, even with a clearly expressed intent to do so. *See generally id.* §§ 201–211, 29 U.S.C. §§ 1051–1061 (participation and vesting requirements); *id.* §§ 301–306, 29 U.S.C. §§ 1081–1086 (funding requirements).

funded plan with separately held assets. *Bruch* itself, however, involved an unfunded plan, *see* 109 S.Ct. at 951, and the Court expressly rejected any significance in the distinction between funded and unfunded plans, *see id.* at 956. It might seem unusual to speak of a trust, as opposed to simply a contract, when there exists no separate fund out of which party-defined obligations are to be paid, but the *Bruch* Court clearly preferred the trust analogy to the contract analogy nonetheless. *See id.* at 955.

*Bruch* does contain language suggesting analogy to contract as well.[11] Contract principles, however, do not support Borg–Warner's position any more than trust principles, for just as a settlor cannot unilaterally reduce its obligations under a trust unless it has expressly reserved a power to do so in the trust, neither can a party to a contract unilaterally reduce its obligations under the contract unless it has expressly reserved a power to do so in the contract. Regardless of whether ERISA-covered benefit plans are better conceived of as trusts or as contracts, the scope of Borg–Warner's power to revise TIP unilaterally must have been defined in—and therefore possibly limited by—the original TIP itself.[12] Therefore, the district court's unqualified conclusion that "a decision to amend or abolish such a plan is not reviewable," Dist. Ct.Op. at 6, is indefensible.

### B.

The major difficulty with the plaintiffs' case is that the record before us contains almost no evidence about whether they are entitled to benefits under the original TIP,[13] or whether the original TIP does, in fact, govern their claim for benefits. Ordinarily, plaintiffs would bear the burden of proof on their TIP claim. Because I would grant summary judgment for Borg–Warner on the issue of whether plaintiffs are entitled to benefits under the revised TIP, meeting such a burden would entail proving both that the original TIP governs their claim for benefits and that they are entitled to benefits under the original TIP. Borg–Warner points out that there is virtually no evidence in the record on either of these points. Therefore, one might think that Borg–Warner is entitled to summary judgment on the ground that the plaintiffs have produced no evidence from which a reasonable jury could find for them on two essential elements of their TIP claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Under these circumstances, however, I conclude that ERISA requires Borg–Warner, not the plaintiffs, to bear the burden of proof at trial—and therefore the initial burden of production at this stage—on all issues relating to the terms of the original TIP.

The plaintiffs' inability to produce crucial evidence about the original TIP is a direct result of Borg–Warner's violation of several of ERISA's disclosure and recordkeeping provisions. For example, Borg–Warner was required to furnish its employees with a summary plan description. *See* ERISA

---

**11.** *See, e.g.,* 109 S.Ct. at 955 ("ERISA was enacted ... 'to protect contractually defined benefits.'" (citation omitted)).

**12.** Often, trust principles and contract principles yield similar analyses and results, as occurred in *Bruch* itself:

> As they do with contractual provisions, courts construe terms in trust agreements without deferring to either party's interpretation....
>
> The trust law *de novo* standard of review is consistent with the judicial interpretation of employee benefit plans prior to the enactment of ERISA. Actions challenging an employer's denial of benefits before enactment of ERISA were governed by principles of contract law. If the plan did not give the employer or administrator discretionary or final authority to construe uncertain terms, the court reviewed the employee's claim as it would have any other contract claim—by looking to the terms of the plan and other manifestations of the parties' intent.

109 S.Ct. at 955.

**13.** We know only that the original TIP provided benefits "following certain terminations," Stipulated Facts ¶ 4, and that the original TIP was used on several occasions in 1986. None of those occasions, however, presented the question involved here—whether the original TIP provides benefits to someone fired by Borg–Warner but immediately offered reemployment at a lower salary by someone in privity with Borg–Warner.

§ 101(a), 29 U.S.C. § 1021(a). Also, it was required to file summary plan descriptions, full plan descriptions, and detailed annual reports with the Secretary of Labor, who must make such documents available to the public. *See id.* §§ 101(b), 103(a), 104(a), 29 U.S.C. §§ 1021(b), 1023(a), 1024(a). Finally, it was required to retain records about the original TIP, begun in 1986, for six years. *See id.* § 107, 29 U.S.C. § 1027. Had any of these requirements been met, plaintiffs would now have access to crucial (and, apparently, the only) evidence bearing on two necessary elements of their TIP claim—whether the original TIP governs their claim and whether they are entitled to benefits under the original TIP.

The purpose of the ERISA disclosure and recordkeeping provisions is to prevent exactly what has happened in this case. They were designed to ensure that participants and beneficiaries "know[ ] exactly where [they] stand[ ] with respect to the plan," H.Rep. No. 533, 93rd Cong., 2d Sess. 11, *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 4649, and are therefore "armed with enough information to enforce their rights," *id.* Because plaintiffs' inability to produce the original TIP, despite their best efforts,[14] flows so proximately from Borg–Warner's ERISA violations, I believe that Borg–Warner, not the plaintiffs, should suffer the consequences of that inability.[15]

"[A]n employer's or plan's failure to comply with ERISA's procedural requirements does not entitle a claimant to a substantive remedy." *Ashenbaugh v. Crucible Inc.,* 854 F.2d 1516, 1532 (3d Cir.1988), *cert. denied,* ___ U.S. ___, 109 S.Ct. 3155, 104 L.Ed.2d 1019 (1989). Nonetheless, when procedural violations of ERISA become sufficiently serious, "they alter the sub-

stantive relationship between employer and employee that disclosure, reporting and fiduciary duties sought to balance somewhat more equally. The quantity of defendants' procedural violations may then work a substantive harm." *Blau v. Del Monte Corp.,* 748 F.2d 1348, 1354 (9th Cir.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985). In this case, Borg–Warner's failure to disclose the terms of the original TIP to its employees in accordance with ERISA requirements has prevented the plaintiffs (and this court) from being able to determine where they stand on the merits. These ("merely" procedural) violations threaten to make a potentially meritorious claim unprovable, and thus might easily work a substantive harm. To prevent this possibility, I believe that *Borg–Warner* should bear the burden of proving all issues relating to the original TIP, which they never adequately disclosed, and then lost.

*Ashenbaugh* described *Blau* as a case involving "egregious circumstances," 854 F.2d at 1532, and Borg–Warner suggests that *Blau*'s reasoning is therefore limited to such cases. Admittedly, the violations of ERISA in *Blau,* which included active concealment of the terms of a plan, were more serious than those committed by Borg–Warner, which at least orally disclosed some general points about the original TIP to its employees. Nonetheless, under normal burdens of proof, Borg–Warner's disclosure violations would foreclose this potentially meritorious claim for benefits no less than would egregious violations involving intentional concealment. In this sense, *Blau* is indistinguishable from the instant case.

---

**14.** One may safely infer that plaintiffs sought discovery of the original TIP. *See* Stipulated Facts ¶ 7 ("[Original TIP] has not been produced in discovery and defendant states that its present whereabouts is unknown.").

**15.** The majority proposes various avenues by which the plaintiffs might have proven their claim *without the original TIP itself.* I agree that "the loss of a copy of a document does not [automatically] foreclose establishing its con-

tents" through indirect means. *Ante* at 288. I believe that under these particular circumstances, however, Borg–Warner's loss of *every* copy of the original TIP in its possession, combined with its failure to disclose *any* copy of the original TIP to its participants or to appropriate regulatory authorities, did—at least as a practical matter—significantly prejudice the plaintiffs' ability to prove their case in exactly the way that ERISA's disclosure provisions were designed to prevent.

*Ashenbaugh,* expressing discomfort with *Blau,* refused to infer a substantive violation from a defendant's failure to respond to requests for information. *See id. Ashenbaugh,* however, is different from this case in three critical respects. First, the procedural violations alleged in *Ashenbaugh* were "too general and nonspecific to permit evaluation. The plaintiffs d[id] not give any details of requests made by them, of refusals on the part of the fiduciaries to respond, or of the particular information sought." *Id.* Here, by contrast, a number of quite specific disclosure and recordkeeping violations are deducible from a set of facts to which Borg–Warner itself has stipulated.

Second, the *Ashenbaugh* plaintiffs' claim for benefits was in no way prejudiced by the disclosure violations: "[d]uring discovery, the plaintiffs' interrogatories were answered and they obtained requested documents pertaining to Plan funding and administration; the plaintiffs d[id] not assert that discovery was insufficient." *Id.* Here, however, when the plaintiffs sought to discover the critical document that had never been properly disclosed to them, Borg–Warner was unable to produce it. Unlike *Ashenbaugh,* therefore, this case involves the very harm that ERISA's disclosure provisions were designed to protect against—participants and beneficiaries "with[out] enough information to enforce their rights," H.Rep. No. 533 at 11, 1974 U.S. Code Cong. & Admin.News at 4649.

Third, the precise issue in *Ashenbaugh* and *Blau* was whether procedural (i.e. disclosure) violations of ERISA could render invalid an otherwise valid interpretation of a plan by its administrator. The *Blau* court's suggestion that they could is arguably problematic, insofar as it threatens to collapse the distinction, carefully maintained in section 502, between the categories of substance and procedure.[16] Thus, *Ashenbaugh* was wary of extending *Blau*'s intimation that procedural violations give rise to *substantive* remedies. *See* 854 F.2d at 1532. Nonetheless, *Blau*'s concern about procedural violations potentially working substantive harms is well-taken. What I have advocated is a different, narrower solution to this problem—shifting the relevant burdens of proof, an essentially *procedural* remedy that is more narrowly tailored to remedy the harm done by prejudicial disclosure violations. Of course this remedy would increase the probability of a plaintiff's ultimately prevailing on the merits, but only to the extent that substance and procedure are inextricably intertwined in some particular case.[17]

I believe that *Borg–Warner* should bear the burden of proving at trial either (1) that the original TIP is inapplicable to the plaintiffs' claims (i.e. that it had in fact reserved a unilateral amendment power) or (2) that the plaintiffs are not entitled to benefits under the original TIP. Under this shifted burden of proof, Borg–Warner's motion for summary judgment on the TIP claim should be denied. A party moving for summary judgment on an issue as to which it bears the ultimate burden of proof must produce evidence that, if uncontroverted, would compel any reasonable jury to find for it on that issue. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 248–53, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986); *Celo-*

---

**16.** ERISA provides two express causes of action by a participant or beneficiary to recover damages. If a participant is claiming a substantive entitlement to benefits, he may sue under section 502(a)(1)(B) "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). If, on the other hand, a participant is claiming damages for a disclosure violation, he must sue under section 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A), and his recovery is limited to a per diem amount, *see id.* § 502(c), 29 U.S.C. § 1132(c).

**17.** For example, imagine a case involving disclosure violations sufficiently prejudicial to trigger the burden shift that I propose. If the defendant employer could come forward and show that the plaintiff is not entitled to benefits under the relevant plan, I would afford that plaintiff *no* substantive remedy, regardless of how egregious the disclosure violations. This view, I believe, balances the need to prevent procedural violations from working substantive harms (the point properly recognized in *Blau* ) against our duty to respect the basic architecture of section 502(a), *see supra* note 16, which counsels against affording substantive remedies for procedural violations (the slightly different point emphasized in *Ashenbaugh* ).

*tex*, 477 U.S. at 331, 106 S.Ct. at 2556 (Brennan, J., dissenting). On this record—precisely because it does not contain the original TIP—Borg–Warner has failed to meet this threshold burden of production on either issue, at least one of which is essential to its defense. I therefore conclude that Borg–Warner is not entitled to summary judgment on the TIP claim, and I dissent from the majority's judgment of affirmance.[18]

### III.

The majority's conclusion that the plaintiffs are not entitled to civil penalties because of Borg–Warner's three-month delay in responding to plaintiffs' December 1987 requests for information about TIP follows inexorably from its treatment of the TIP claim. Dissenting from the latter, I cannot endorse its treatment of the former.

Section 104(b)(4) of ERISA provides that "[t]he administrator [of a plan] shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated ... plan description." 29 U.S.C. § 1024(b)(4). Moreover, an administrator who fails to do so within 30 days of the request "may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal." ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1).

Each plaintiff claims to be a "participant," defined in relevant part as "any employee or former employee ... who is or may become eligible to receive a benefit of any type from an employee benefit pian."

*Id.* § 3(7), 29 U.S.C. § 1002(7).[19] *Bruch* held that this definition includes anyone with "a colorable claim that ... he or she will prevail in a suit for benefits." 109 S.Ct. at 957–58. Because I would hold that the plaintiffs, at least insofar as can be ascertained at this stage of the proceedings, have a colorable claim for benefits, I would find them to be "participants" as that term is used in ERISA. If plaintiffs are indeed "participants," then Borg–Warner's violation of section 104(b)(4) is unquestionable.

Borg–Warner argues that even if it did violate section 104(b)(4), a district court may impose liability under section 502(c) only if the procedural violation at issue harmed or prejudiced the plaintiffs.[20] District courts are split on this issue. *Compare, e.g., Henne v. Allis Chalmers Corp.,* 660 F.Supp. 1464 (E.D.Wis.1987) (plaintiffs seeking civil penalties based on disclosure violations must show possible prejudice flowing from the violations) *with, e.g., Porcellini v. Strassheim Printing Co.,* 578 F.Supp. 605 (E.D.Pa.1983) (plaintiff need not show harm or prejudice).

I would reject the limitation judicially engrafted onto section 502(c) in *Henne.* First of all, nothing in the language of that section suggests that a threshold showing of prejudice is required. Moreover, it is expressly characterized as a "penalty," *see* 29 U.S.C. § 1132(c), and obviously operates as such. It is deterrent and punitive in nature, not compensatory (as the per diem maximum makes obvious). Thus, a thresh-

---

**18.** Plaintiffs too moved for summary judgment. In my view, they should not bear the ultimate burden of persuasion on issues relating to the original TIP. When a party moves for summary judgment, it need not always produce evidence, but may argue instead that the record contains no evidence from which a reasonable jury could find for the nonmoving party on any essential element of the claim as to which the nonmoving party bears the burden of proof. *See Celotex,* 477 U.S. at 322–24, 106 S.Ct. at 2552–53. As noted above, Borg–Warner should bear the burden of proving either (1) that the revised TIP governed or (2) that plaintiffs are not entitled to benefits under the original TIP, and the record contains virtually no evidence about either issue. Thus, shifting the burden of proof with respect to these issues could conceivably make summary judgment appropriate for the *plaintiffs* on the TIP claim. I need not reach this issue, however, to justify my dissent from the majority's affirmance of summary judgment for defendant Borg–Warner.

**19.** No plaintiff claims to be a "beneficiary," which is defined as someone designated by a participant to receive his or her benefits. *See* ERISA § 3(8), 29 U.S.C. § 1002(8).

**20.** I shall assume *arguendo* that the plaintiffs were not prejudiced by this particular disclosure violation, in contrast to the obviously prejudicial disclosure violations discussed in Part II of this dissent.

old requirement of prejudice or harm is inappropriate.

The district court failed to consider imposing a fine under section 502(c) because it found no violation of section 104(b)(4) because it mistakenly concluded that the plaintiffs were not "participants" in TIP at the time of their written request for information. I would therefore reverse its judgment on the claim for civil penalties, reject the view that section 502(c) contains an implicit threshold prejudice requirement, and allow the district court on remand to exercise its discretion in deciding whether to impose a civil penalty on Borg–Warner.