

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-27-1994

# Harris, et al. v. City of Phila., et al.

Precedential or Non-Precedential:

Docket 93-2034

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Harris, et al. v. City of Phila., et al." (1994). *1994 Decisions.* Paper 142.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/142

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT


No. 93-2034



MARTIN HARRIS, JESSE KITHCART, WILLIAM DAVIS,
RANDALL CUMMINGS, EVELYN LINGHAM, ESTRUS FOWLER,
TYRONE HILL, NATHANIEL CARTER and LONNIE BANKS

v.

THE CITY OF PHILADELPHIA; JOAN REEVES, in her official
capacity as Commissioner of the Department of Human
Services of the City of Philadelphia;
ALBERT F. CAMPBELL, ROSITA SAEZ-ACHILLA,
GENECE E. BRINKLEY, ESQ., REV. PAUL M. WASHINGTON,
M. MARK MENDEL, HON. STANLEY KUBACKI, MAMIE FAINES,
each in his or her official capacity as a member of the
Board of Trustees of the Philadelphia Prison System;
J. PATRICK GALLAGHER, in his official capacity as
Superintendent of the Philadelphia Prison System;
HARRY E. MOORE, in his official capacity as
Warden of Holmesburg Prison;
WILHEMINA SPEACH, in her official capacity as
Warden of the Detention Center;
PRESS GROOMS, in his official capacity as
Warden of the House of Corrections;
RAYMOND SHIPMAN, in his official capacity as
Managing Director of the City of Philadelphia; and
HON. EDWARD G. RENDELL, in his official capacity
as Mayor of the City of Philadelphia,

Theodore Levine, in his official capacity as Commissioner of the
Department of Human Services of the City of Philadelphia;
Albert F. Campbell, Rosita Saez-Achilla, Genece E. Brinkley,
Esq., Rev. Paul M. Washington, M. Mark Mendel, Hon. Stanley
Kubacki, Mamie Faines, each in his or her official capacity as
Trustees of the Philadelphia Prison System;
J. Patrick Gallagher, in his official capacity as Superintendent
of the Philadelphia Prison System; Harry E. Moore, in his
official capacity as Warden of Holmesburg Prison; Wilhemina
Speach, in her official capacity as Warden of the Detention
Center; Press Grooms, in his official capacity as Warden of the
House of Corrections; Raymond Shipmen, in his official capacity
as Managing Director of the City of Philadelphia; and Hon. Edward
G. Rendell, in his official capacity as Mayor of the City of
Philadelphia; and the City of Philadelphia,

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 82-cv-01847)


Argued:  September 14, 1994

Before:  SLOVITER, Chief Judge, MANSMANN and
ALITO, Circuit Judges

(Opinion Filed  September 29, 1994)


John W. Morris
The Graham Building
Philadelphia, PA  19102

Mark A. Aronchick
Gary A. Rosen (Argued)
Randy Karafin Hubert
Hangley Connolly Epstein
 Chicco Foxman & Ewing
Philadelphia, PA  19102

James B. Jordan
Office of City Solicitor
Philadelphia, PA  19102

        Attorneys for Appellants

David Richman
Philip H. Lebowitz (Argued)
Michael S. Hino
Pepper, Hamilton & Scheetz
Philadelphia, PA  19103

        Attorneys for Appellees

SLOVITER, Chief Judge.

Before us is the City of Philadelphia's appeal from the orders of the district court dated September 24, 1993 and September 30, 1993 entering an injunction governing the occupancy and conditions of confinement of the City's newly constructed prison facility denominated the Alternative and Special Detention Central Unit ("ASDCU"). This is one of a series of appeals taken by the City from related orders arising out of a consent decree and various revisions entered into between the City and the plaintiffs, a class of prisoners incarcerated in the Philadelphia prison system, to ameliorate the severe overcrowding and harsh conditions in the Philadelphia prisons.[1] Although this appeal was argued at the same time as the other appeals, and the other appeals remain pending for disposition by this court, the court disposes of this appeal initially for reasons that will become clear hereafter.

---

[1]. The other appeals are from an order adjudicating the City in contempt and imposing fines for noncompliance with an order requiring occupancy of a substance abuse and treatment facility (No. 94-2186); a series of orders adjudicating contempt and imposing stipulated penalties for failure to timely submit a Facilities Audit and Ten-Year Plan as required by the consent decree (Nos. 93-1997, 93-2116, 93-2117); and an adjudication of contempt and imposition of fines for modification of procedures by the City for designation of bailable prisoners for release (No. 93-1988).

I.

BACKGROUND OF THE CASE AND THE CONSENT DECREES

The complaint in this case was initially filed in 1982 by a group of inmates suffering from alleged overcrowding at Holmesburg Prison. Defendants in the case include the City of Philadelphia and various city officials charged with the responsibility of administering the Philadelphia prison system (hereinafter collectively referred to as "the City"). In 1986, the plaintiff class was expanded to include all past, present and future inmates in the Philadelphia prison system, and the allegations of overcrowding were expanded to apply to the Philadelphia prison system as a whole. There is also pending a somewhat parallel action in the Philadelphia Court of Common Pleas which found, some twenty years ago, that conditions in the Philadelphia prison system violated the prohibition against cruel and unusual punishment in the Eighth Amendment to the United States Constitution and which retains control over aspects of the prison system pursuant to a consent decree entered by the City and representatives of that plaintiff class.[2]

On November 14, 1986, the plaintiff class in the federal case and the City entered into a Settlement Agreement. On December 30, 1986, the district court approved the Settlement Agreement and entered a Consent Order (the "1986 Consent Decree")

_____

[2]. We note, however, that the Supreme Court of Pennsylvania took cognizance of findings of "vast improvements in prison conditions" as a result of the remedial decrees entered into in that case. See Jackson v. Hendrick, 503 A.2d 400, 407 (Pa. 1986). We offer no opinion on that issue.

consistent with its terms.  Among other things, the 1986 Consent Decree provided for the construction of a downtown 440-bed detention facility by December 31, 1990 and established a maximum allowable population ("MAP") of 3,750 inmates for the then-existing facilities of the Philadelphia prison system.  See App. at 91-92.

Five years after the entry of the 1986 Consent Decree, the City had not complied with many of its provisions, including the provision requiring construction of the 440-bed facility and the provision establishing the MAP.  In 1991, the parties entered into a new Stipulation and Agreement approved by the district court which entered another Consent Order consistent with its terms (the "1991 Consent Decree") and which contained a series of remedial decrees and stipulations aimed at alleviating the overcrowding and conditions in the prison system.

The 1991 Consent Decree relieved the City of its obligation under the 1986 Consent Decree to construct the 440-bed detention facility.  Instead, the 1991 Consent Decree imposed, among other things, the following requirements:

11. Defendants shall conduct expeditiously the orderly planning process set forth in the document entitled "Prison Planning Process" attached as an Appendix hereto and incorporated herein by reference. **Defendants shall thereafter construct or arrange for such new facilities** and close or renovate existing facilities in accordance with the plans produced pursuant to the Prison Planning Process and approved by the Court.

. . . .

14. Defendants shall construct a new prison facility or facilities capable of housing in the aggregate

at least 1,000 inmates by May 25, 1994.  Such construction shall be planned pursuant to the Prison Planning Process.

App. at 114-15. (emphasis added).


The "Prison Planning Process" set forth in the Appendix to the

1991 Consent Decree includes the following provision:

C.    The defendants shall develop physical and operational standards for the operation of their facilities.  Defendants shall then apply these standards when making the evaluations and construction plans called for in subparagraphs 1-4 below.  Such standards shall comply with constitutional standards and requirements for the incarceration of sentenced prisoners and pretrial detainees, where applicable, and shall comply with correctional industry standards of the American Correctional Association (ACA), with reference to those of the American Jail Association (AJA), the Federal Department of Justice (DOJ), the American Public Health Association (APHA), the American Medical Association (AMA), and the American Bar Association (ABA).


App. at 131 (emphasis added).

II.

<u>FACTS LEADING TO THIS APPEAL</u>

The City decided in late 1992 to double the capacity of the new facility it was required to construct by the 1991 Consent Decree from 1000 to 2000 beds. App. at 781. In order to build the second 1000 beds, however, the City needed to demolish Laurel Hall, which housed 175 inmates. App. at 781. Because Laurel Hall formed an integral part of the MAP limits set forth in the Consent Decree, the City sought court approval of a plan to relocate Laurel Hall inmates. Supp. App. at 1175-77, App. at 464-65. The district court required that the City develop a plan for the inmates before razing Laurel Hall. App. at 456, 749-50, 821.

On March 17, 1993 the City submitted a program outline and plan drawings for the construction of the ASDCU, a pre-fabricated modular facility, designed as a minimum security facility to house 192 inmates. On April 30, 1993 the City presented these plans to the court, apparently in chambers, through its architect and a City official and there was a discussion of space requirements, food service, and the target date for demolition of Laurel Hall. App. at 733-64.

Although the court-appointed consultant commented that the plans were "consistent with the physical and operational standards," App. at 761, after the April 30, 1993 presentation the plaintiffs, pursuant to the court's invitation to communicate their concerns, objected, <u>inter alia,</u> to the number of inmates the City proposed to house at the ASDCU. The crux of the dispute

concerns whether the three wings of the proposed facility were multiple occupancy cell/rooms within ACA standards, which plaintiffs contended could house no more than 50 inmates each, or 64-bed dormitories, which the City's consultants believed appropriate.

There followed a series of meetings by the parties with the special master, culminating in what the City calls a "conference" and what the plaintiffs call a "hearing" on September 22, 1993.  This occurred two days before the City had scheduled to move the Laurel Hall prison population to the ASDCU. The parties discussed with the district court a variety of issues related to occupancy in the new facility, including smoking by inmates and activities programs to mitigate the density of the ASDCU population.  App. at 1114, 1134-38, 1142-49, 1156-83. During and at the conclusion of the discussion, the district court expressly requested that the City submit a motion for a variance from the ACA standards, but despite counsel's agreement to do so no such motion was forthcoming.

The district court indicated that it would limit the number of inmates at the ASDCU to 168, which could be increased to 192 upon the City's application to the court if the City could demonstrate that at least 163 of them were participating in jobs or work.  App. at 1170.  The court referred to the "draft of an order" which would be forwarded for comment, App. at 1187, but it is unclear whether a draft order was prepared or comments were received from the parties.

On September 24, 1993, however, the court issued a sua sponte order (hereinafter "the September 24 Order") which recited the facts deemed relevant to the ASDCU dispute, including reference to the hearing of September 22, 1993, the report of the court's "independent consultant," and the court's own tour of the ASDCU facility, and which "allowed" the occupancy of ASDCU by more than 150 inmates on specified terms and conditions. These included (1) the classification of inmates assigned to the ASDCU, (2) provision for food services satisfactory to the City's Health Department, with the court "expect[ing] copies of inspection reports by the Health Department," (3) provision of adequate ventilation for smoking rooms and "monthly tests of air quality to assure compliance," (4) the provision of work tables and seating in at least three work stations, (5) provision of volunteer outdoor recreation of no less than two hours after the evening meal, and (6) certain staffing of ASDCU. The district court then set a maximum allowable population for ASDCU at 168 as long as 80% of the inmates had work or school activities six hours per day, five days per week within ten days of arrival.

The September 24 Order also included provisions by which the City could request a population increase to 192 upon the City's representation that 85% of the inmates will be assigned program activities (i.e. work or schooling), and (2) the provision of voluntary activities other than religious programming, "such as AA/NA, Smoke-enders, parenting, literacy training (Hooked on Phonics or the equivalent), [and] arts and crafts," for two hours per day. The court also ordered that the

City submit a compliance report and a plan within 60 days, and set a hearing within 90 days. Finally, the court granted the City permission to proceed with the demolition of Laurel Hall upon transfer of the prisoners in accordance with the terms of the Order.

On September 30, without any prompting from the parties, the district court issued a second sua sponte order requiring that daily reports be made available to the court upon request regarding issues covered by the September 24 order. These included, inter alia, with respect to the posts and staffing patterns, "a daily report of the number of posts each shift, the number of assigned staff reporting and the number of staff either reassigned or working overtime to replace non-reporting staff," "[d]aily reports of the program activities provided, the number of inmates assigned to program activities, the number who actually report to their assignments as well as their names, and the number of hours spent in each assignment," and a "daily log of the times that the recreation yards are opened and closed." The September 30 Order also established a schedule of fines for non-compliance with the terms of the September 24 Order. The district court also required a compliance reporting plan in 60 days and scheduled a hearing for 90 days. Joint App. at 1334.

The City now appeals from the district court's orders of September 24 and September 30, 1993. It grounds appellate jurisdiction on 28 U.S.C. § 1292(a), and the plaintiffs agree

that the orders constitute injunctive relief appealable under that section.

III.

DISCUSSION

On appeal, the City contends as follows: First, it argues that the district court erred in entering a permanent injunction governing the operations of the ASDCU sua sponte and without observing the fundamental procedural and evidentiary safeguards of the adversary process. In support of that contention the City argues that the district court erred in disregarding the requirement to hold a hearing prior to entering a permanent injunction; in determining disputed issues of fact on the basis of non-record evidence; and that the September 24th and September 30th orders do not reflect "agreements reached," despite the characterization of the district court in the September 24th order, and that therefore their entry without a hearing cannot be justified on that basis. It is the City's position that there was no voluntary meeting of the minds and that it was subject to a "Hobson's Choice" with an "undercurrent of coercion" because the district court had indicated it would not approve moving the Laurel Hall population to ASDCU without the conditions imposed and the City was faced with the need to raze Laurel Hall to meet its construction schedule.

The City contends next that the district court's interpretations of the consent decree and of the ACA standards were erroneous. It contends, notwithstanding the language of the consent decree emphasized above, that the ASDCU was not required

to meet the ACA standard under the consent decree and that in any event the ASDCU does not violate the ACA standard. This argument depends upon resolution of the factual issue as to whether the wings are "multiple occupancy cells/rooms" or "multiple occupancy dormitories," a factual dispute as to which the City contends it did not have the opportunity to present evidence.

Finally, the City contends that the "conditions of confinement" imposed by the district court constitute impermissible judicial micromanagement of the operations of a county prison facility. In support of this argument the City refers to the Supreme Court's emphasis on according great deference to the policies and opinions of prison administrators, and the strong separation of powers concerns heightened in this case by the important interests of federalism. These are serious contentions, and although many of them are forcefully answered in the plaintiffs' brief it would have been helpful to this court if we had the benefit of the district court's consideration and its response. Surprisingly, however, the City candidly concedes that "[t]he issues presented on appeal were not raised or adjudicated on the record in the district court." Appellant's brief at 1 n.1.

This court has consistently held that it will not consider issues that are raised for the first time on appeal. See, e.g., Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1115 (3d Cir. 1993); In re American Biomaterials Corp., 954 F.2d 919, 927-28 (3d. Cir. 1992); Frank v. Colt Industries, Inc., 910 F.2d 90, 100 (3d Cir. 1990); Flick

v. Borg-Warner Corp., 892 F.2d 285, 287-88 (3d Cir. 1989); Newark Morning Ledger Co. v. United States, 539 F.2d 929, 932 (3d Cir. 1976). This general rule "applies with added force where the timely raising of the issue would have permitted the parties to develop a factual record." American Biomaterials, 954 F.2d at 927-28.

The Supreme Court has frequently approved the application of such a rule, explaining that the rule against considering issues not raised before the district court is considered "essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues . . . [and] in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence." Hormel v. Helvering, 312 U.S. 552, 556 (1941); see also Singleton v. Wulff, 428 U.S. 106, 120 (1976) (noting that, when an argument was raised for the first time on appeal, "[w]e have no idea what evidence, if any, petitioner would, or could, offer in defense [of the argument].").

The City's failure to raise these issues before the district court is surprising. Indeed, the district court gave the City the opportunity to present again at least some of these issues by construing a request filed by the City for authorization to increase the population of ASDCU to 192 and to modify the reporting requirements as a motion under Rule 60(b) to relieve the defendants of certain provisions of the September 24, 1993 Order. See Order of June 27, 1994 at 8. The district court

cited authority it construed as depriving it of jurisdiction to rule on that motion. See Venen v. Sweet, 758 F.2d 117 (3d Cir. 1985). Because the City apparently wanted to insure that this court address not only the occupancy limit but also the related conditions imposed by the district court, in lieu of requesting this court to remand, the City has represented that it will withdraw its request pending before the district court.

The plaintiffs argue with some plausibility that at least some of the issues presented here by the City have been waived. See, e.g., Appellees' Brief at 40 ("The City failed, at every stage prior to this appeal, to request a formal evidentiary hearing regarding the occupation of ASDCU."). Had the City filed a Rule 60(b) motion, the district court would have had the opportunity to consider the substantial number of factual questions that are intertwined with the City's arguments, including, but not limited to, whether the ASDCU facility complied with ACA standards and whether the ACA standards or any other relevant standards incorporated the subjects addressed in the district court's orders; whether the City had a fair opportunity to present its experts on the issue of the characterization of the multi-unit rooms, and whether, on reflection, the decrees inappropriately involved the court in the micromanagement of a state institution. See Halderman v. Pennhurst State School & Hosp., 673 F.2d 628, 637-39 (3d Cir. 1982) (in banc) (declining to address a defense to a civil contempt citation that had not first been presented to the

district court through a motion under Rule 60(b)), cert. denied, 465 U.S. 1038 (1984).

Although we would have the undisputed discretion to view the City's failure to raise these issues in the district court as a waiver, a practice this court generally follows, in light of the strong public interest in the subject matter of these decrees, we will not do so in this instance. See Selected Risks Insurance Co. v. Bruno, 718 F.2d 67, 69-70 (3d Cir. 1983). Nonetheless, we decline to address these significant issues until the district court has an opportunity to consider "the competing equities, . . . the strengths and weaknesses of the parties' positions, and . . . the imposition of conditions for relief from a judgment." Pennhurst, 673 F.2d at 637.

A remand will give the district court the opportunity to address the City's vigorous arguments focused on, inter alia, the detail of the monitoring of the ASDCU facility. Of course, in the present circumstances, we express no opinion regarding the propriety of the district court's Orders of September 24, 1993 and September 30, 1993, and nothing that we have written should be construed as an opinion on the merits, which we do not reach.

IV.

For the foregoing reasons, we will not affirm, reverse, or vacate the district court's orders of September 24, 1993 and September 30, 1993, but instead will remand this matter to the district court so that the City can file an appropriate motion. The mandate will issue forthwith. Costs on appeal to be assessed against the City.