**Robert L. HAMILTON**

v.

**AIR JAMAICA, LTD.**

**Civ. A. No. 89–6133.**

United States District Court,
E.D. Pennsylvania.

Nov. 2, 1990.

---

**1262**

Robert G. Leino, Eagleville, Pa., for plaintiff.

James M. Penny Jr. and Marjorie H. Gordon, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for defendant.

## OPINION

GAWTHROP, District Judge.

Plaintiff, Robert Hamilton, brought this action against his former employer, defendant, Air Jamaica, Ltd., seeking additional severance pay under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002 *et seq.*, and additional vacation pay under Pennsylvania contract law. After conducting a bench trial on the merits of these claims, I find for plaintiff on the severance-pay claim and for defendant on the vacation-pay claim.

## FINDINGS OF FACT

1. Plaintiff began working for defendant, Air Jamaica, Ltd., as a sales representative in August, 1976. Plaintiff was promoted to account executive in 1985 and was working in that position in Philadelphia when Air Jamaica terminated his employment on May 31, 1989.

2. Air Jamaica terminated plaintiff's position as part of a corporate reorganization brought on by budgetary problems. *See* Testimony of Oswald Simpson, Air Jamaica Director of Industrial Relations, Transcript at 76.

3. At the time of his termination, plaintiff was an "exempt" employee, as defined on page 2 of the "Policies and Procedures" section of Air Jamaica's Employee Handbook ("Handbook"). *See* Plaintiff's Exhibit One.

4. Air Jamaica distributed the Handbook—a written document outlining the components of Air Jamaica's employee benefits program, including vacation benefits and separation pay benefits—to all of its employees early in 1989. Plaintiff received his copy of the Handbook early in March, 1989. *See* Plaintiff's Exhibit One, cover letter dated 3/06/89.

5. The Handbook contains a description of a policy to pay employees separation pay. The Handbook states that "[i]f termination occurs due to job elimination or reorganization, a non-exempt employee will receive 2 weeks a year for each full year worked and an exempt employee will re-

ceive four weeks for each full year worked." *See* Plaintiff's Exhibit One, Policies and Procedures at 7.

6. The separation pay policy described in the handbook was not the policy that Air Jamaica intended to be included therein. Air Jamaica has a longstanding separation pay practice, as evidenced by its conduct prior to and after plaintiff's termination, to pay separation pay in the amount of two weeks pay for each full year of employment, with a maximum payment of three months. *See* testimony of Simpson, transcript at 78–81.

7. Air Jamaica retained the consulting firm of Foster–Higgins, to help prepare the Handbook. The incorrect statement of Air Jamaica's separation pay policy was written into the Handbook by Linden Dunn, a Foster–Higgins employee, during production at Foster–Higgins. *See* testimony of Simpson, transcript at 83. Air Jamaica failed to discover the mistake during proofreading of the Handbook. *Id.* at 91–92.

8. Air Jamaica's preparation of the Handbook, including supervision over and copy-editing of its contents, was frustrated by a tight deadline, personal tragedy and natural disaster. The officer who spearheaded the project was murdered in the summer of 1988 in the course of a labor dispute with Air Jamaica pilots. Testimony of Simpson, transcript at 86. His assistant died in the same week of natural causes. *Id.* In September, 1988, Jamaica was ravaged by Hurricane Gilbert, shutting down Air Jamaica operations for a full two weeks and putting the Handbook project on hold until late in the year. *Id.*, at 90. During the entire course of the project, Air Jamaica officers were preoccupied with the company's medical benefits package, which was undergoing change, and a desire to release the Handbook concurrent with this change at the beginning of 1989. *Id.*, at 89–91.

9. Air Jamaica discovered the mistake in the Handbook regarding Air Jamaica's separation pay policy after the decision to terminate plaintiff's employment. Mr. Simpson first became aware of the error on May 25, 1989, while in the Philadelphia office to personally inform plaintiff of the termination. *See* testimony of Simpson, transcript at 93, 108.

10. Mr. Simpson gave plaintiff a letter on 25, 1989, memorializing the terms of plaintiff's termination, to become effective on May 31, 1989. The letter indicated that plaintiff would be paid a "terminal gratuity" based on the formula of "two weeks pay for each year of employment to a maximum of three months' payment". *See* Plaintiff's Exhibit Two.

11. Air Jamaica sent a memorandum, dated May 30, 1989, to all affected employees, advising them that there was an error in the Handbook's description of the separation pay policy. Testimony of Simpson, transcript at 93. The memorandum advised that the Handbook should state that employees terminated due to job elimination or reorganization will receive "a terminal gratuity based on two weeks' basic pay per year for each full year worked up to maximum of three months' pay." *See* plaintiff's Exhibit Five.

12. Plaintiff received the errata memorandum on May 30, 1989. *See* testimony of Hamilton, transcript at 56.

13. Air Jamaica paid defendant a terminal gratuity amounting to three months pay.

14. Plaintiff made a demand to Air Jamaica on June 3 requesting a severance payment in accord with the policy described in the Handbook. *See* Plaintiff's Exhibit Three. By letter of July 14, Air Jamaica indicated that its policy is to pay severance in the amount of two weeks per year worked with a maximum payment of three months. *See* plaintiff's Exhibit 4.

15. The Handbook contains a disclaimer, whereby Air Jamaica reserved the right in individual cases and generally, "to alter, reduce or eliminate any pay practice, policy or benefit, in whole or in part, without notice". *See* plaintiff's exhibit one, Policies and Procedures at 1. The Handbook further contains a "statement of understanding", which employees are instructed to date, sign and return to their supervisors, indicating that they have reviewed the

policies and procedures section of the Handbook and understood the disclaimer contained therein. *Id.*, Policies and Procedures at 8.

16. Plaintiff did not sign and return the statement of understanding because he did not wish to consent to the powers Air Jamaica reserved for itself through the disclaimer. *See* testimony of Hamilton, transcript at 13–14.

17. Air Jamaica has a policy, and had a policy at the time of plaintiff's termination, to pay terminated employees for accrued vacation time. *See* testimony of Simpson, transcript at 95–97. The policy allows carryover from one year to the next, but does not allow an employee to carry over in one year more than one year's vacation entitlement. *Id.*, at 95.

18. Air Jamaica keeps, and kept at the time of plaintiff's termination, records of available vacation time for all of its North American employees. At the conclusion of each year, individual reports stating the accrued vacation time for each employee are sent to the employees' departments and distributed to the employees for review. Employees that disagree with the report are to notify their supervisors so necessary adjustments can be made. *See* testimony of Simpson, transcript at 96–97; testimony of Frank Carter, Regional Director of Air Jamaica's Philadelphia Office, transcript at 118.

19. Plaintiff was given a report, stating the vacation days earned by him, in January, 1989. *See* testimony of Carter, transcript at 118; *contra* testimony of Hamilton, transcript at 34.

20. Air Jamaica records showed that plaintiff was due 12 vacation days at the time of his termination. Testimony of Simpson, transcript at 102.

21. Plaintiff kept his own personal record of accrued vacation days in a daily work log. Plaintiff did not take Air Jamaica's carry-over policy into consideration when calculating accrued vacation time in his work log. *See* testimony of Hamilton, transcript at 36–38. At the time of his termination, plaintiff's personal records showed that he was entitled to pay for 26 vacation days. *Id.*, at 28.

22. Air Jamaica paid plaintiff in full for 12 vacation days.

23. Plaintiff made a demand to Air Jamaica for payment for 14 additional vacation days. *See* plaintiff's Exhibit Three. In a letter by Oswald Simpson dated July 14, 1989 Air Jamaica agreed that plaintiff was entitled to 26 days vacation pay and promised to pay the balance no later than July 31, 1989. *See* plaintiff's Exhibit Four. Mr. Simpson later determined that this concession was in error, in that he had erroneously considered plaintiff entitled to a full vacation allotment for 1989, when in fact plaintiff was entitled only to a proportional allotment for 1989 measured by the percentage of 1989 in which plaintiff worked for Air Jamaica. Testimony of Simpson, transcript at 101.

## DISCUSSION

### I. *Jurisdiction and Applicable Law*

ERISA provides a cause of action under federal law to any participant or beneficiary of a benefit plan to recover benefits due under the plan, if the plan falls within the scope of the statute. 29 U.S.C. § 1132(a)(1)(B). The statute covers two types of plans, pension plans, 29 U.S.C. § 1002(2)(A), and welfare plans, 29 U.S.C. § 1002(1). Welfare plans include any "plan, fund, or program" established or maintained by an employer for the purpose of providing certain benefits to its employees or their beneficiaries. Benefit plans providing severance pay are considered welfare plans covered by ERISA. *See Massachusetts v. Morash*, 490 U.S. 107, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98, 109 (1989); *Pane v. RCA Corp.*, 868 F.2d 631, 635 (3rd Cir.1989); *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1352 (2d Cir.1984). This is true whether or not the severance benefits are paid out of a separately established fund. *Gilbert v. Burlington Industries*, 765 F.2d 320, 324–25 (2d Cir.1985). On the other hand, vacation plans that pay benefits out of a company's general assets have been held to be outside the scope of ERISA. *Morash*, 490 U.S. at 107, 109 S.Ct. at 1673,

104 L.Ed.2d at 109. Plaintiff's severance pay claim is thus covered by ERISA, while plaintiff's vacation pay claim is left to be governed by the Pennsylvania common law of contract.

■ This court's jurisdiction over the plaintiff's severance-pay claim is predicated upon 28 U.S.C. § 1331, which gives this court the authority to hear claims based on federal law, and 29 U.S.C. § 1132(f), which gives this court specific power to hear claims brought by plan participants under ERISA. Jurisdiction over plaintiff's vacation-pay action is based on this court's inherent jurisdiction over pendent state-law claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

## II. *Severance Pay Claim*

### A. Governing Plan

■ Before determining whether defendant breached an obligation to pay benefits under its severance pay plan, it is necessary to determine which plan defendant was charged under ERISA to operate. Plaintiff argues that Air Jamaica was bound to the separation pay plan described in the Handbook. Defendant counters that the Handbook plan was an error and that the plan Air Jamaica intended to include in the Handbook—the plan established by Air Jamaica's pattern and practice—should control. After reviewing the language and purpose of ERISA, I find that the policy as written in the Handbook must govern the dispute.

ERISA requires that every employee benefit plan be "established and maintained pursuant to a written instrument", 29 U.S.C. § 1102(a)(1), and provides several ways for participants to receive information about the plan. ERISA requires that employers or plan administrators deliver to participant employees a "summary plan description" that is "written in a manner calculated to be understood by the average plan participant", 29 U.S.C. § 1022(a)(1) and that contains, among other things, a description of requirements for eligibility, circumstances that may result in denial of benefits, and procedures for making a

claim. 29 U.S.C. § 1022(b). ERISA also provides that the plan administrator shall make all plan documents available for review by employees upon their request. 29 U.S.C. § 1024(b)(2).

■ The only written description of Air Jamaica's severance pay policy adduced at trial was the Handbook description. Plan descriptions in employee handbooks or otherwise distributed to employees are considered ERISA plan documents. *See Alday v. Container Corp. of America,* 906 F.2d 660, 667 (11th Cir.1990); *Eardman v. Bethlehem Steel Corporation Employee Welfare Benefit Plans,* 607 F.Supp. 196, 207 (W.D.N.Y.1984). One document can serve as both the "summary plan description" required under 29 U.S.C. § 1022(b) and the "written instrument" required under 29 U.S.C. § 1102(a)(1). *See Alday,* 906 F.2d at 662, n. 2.

If, as defendant contends, the Handbook policy was not Air Jamaica's true severance pay policy, Air Jamaica must be seen to have breached both of these requirements. Air Jamaica prepared no written instrument or summary description for the purportedly true policy. By disclosing an inaccurate version of the policy while harboring the true one, Air Jamaica may be liable for misrepresentation. *See Genter v. Acme Scale & Supply Co.,* 776 F.2d 1180, 1185 (3rd Cir.1985) (disclosures by employers that mislead, misinform or otherwise fail to inform employees of their rights under a benefit plan have are actionable). However, I need not reach this issue, as I find that the policy behind ERISA's writing and reporting provisions requires me to treat the writing in the Handbook not as a misrepresentation, but as Air Jamaica's severance pay plan.

■ ERISA's writing and reporting requirements are designed to protect the interests of employees in their benefit plans by ensuring that employees are apprised of their rights and obligations under the plans. *See Genter,* 776 F.2d at 1185; *Blau v. Del Monte Corp.,* 748 F.2d 1348, 1356 (2d Cir.1984); *Donovan v. Dillingham,* 688 F.2d 1367, 1372 (11th Cir.1982). By man-

dating that plans be in writing, available for review, and disclosed in summary descriptions, Congress intended to provide employees with the means to "determine exactly what [their] rights and obligations are under the plan[s]", *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1163 (3rd Cir.1990) (quoting H.Rep. No. 1280, 93rd Cong., 2d Sess. 297, *reprinted in* 1974 U.S. Code Cong. & Admin.News 5038, 5077–78), and the information to enable them to "police" administration of these plans. *Blau*, 748 F.2d at 1354 (quoting H.R.Rep. No. 93–533, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad. News 4639, 4649).

In so providing, Congress clearly contemplated that employees would rely on the written documents prepared and disclosed by employers. In a case factually similar to the one at bar, the Third Circuit held that the right of employees to rely on written plan documents precludes oral modification of benefit plans. *See Hozier*, 908 F.2d at 1163–64. In *Hozier*, an administrator denied severance benefits under a 1985 written plan that provided severance pay according to age and years of service, and followed instead an 1987 amended plan that provided a flat two weeks severance pay to all terminated employees. The *Hozier* Court held that the original plan controlled, because the amended plan had not been reduced to writing before the employees were terminated. *Id.*

In doing so, the Third Circuit cited to opinions from six other circuits holding that written documents cannot be modified by oral communications. *See Nachwalter v. Christie*, 805 F.2d 956, 960 (11th Cir. 1986); *Pizlo v. Bethlehem Steel Corp.*, 884 F.2d 116, 120; *Degan v. Ford Motor Co.*, 869 F.2d 889, 895 (5th Cir.1989); *Musto v. American General Corp.*, 861 F.2d 897, 910 (6th Cir.1988); *Moore v. Metropolitan Life Insurance Co.*, 856 F.2d 488, 492 (2d Cir.1988); *Straub v. Western Union Telegraph Co.*, 851 F.2d 1262, 1265 (10th Cir.1988). Each of these cases held that plan administrators could not be bound to oral representations purportedly offering benefits greater than those provided in written benefit plans. *Hozier* established

the same for oral amendments decreasing available benefits, stating that Congress did not intend for plan participants to be "left to the uncertainty of oral communications". *Hozier*, 908 F.2d at 1164 (quoting *Musto*, 861 F.2d at 909–10). Indeed, Congress intended that plan documents and summary descriptions "exclusively govern" an employer's obligations under ERISA. *Moore*, 856 F.2d at 492.

The present case is indistinguishable from *Hozier*. Although the written plan here is one that Air Jamaica never intended to control, while the written plan in *Hozier* was one the employer intended to supercede, the reasoning of *Hozier* demands that even mistaken writings govern over an unwritten practice. Both cases involve a written representation contradicted by an employer's unwritten intent; *Hozier* holds that the writing must control because of the plan participants' reliance interest in the instrument. Nothing in *Hozier* suggests grounds for modifying this rule when the written document is published mistakenly. The circumstances under which Air Jamaica prepared the Handbook were undeniably trying. Nevertheless, plan administrators are under an obligation to report accurately, 29 U.S.C. § 1022(a)(1), and, under *Hozier*, are bound to the representations they make.

Indeed, other courts have held that employers are bound to their disclosures even where there is written evidence of a contrary intent. The Sixth Circuit has held that when there is a conflict between plan documents and the summary plan descriptions disclosed to employees, the terms of the summary plan control. *Edwards v. State Farm Mutual Auto Insurance Co.*, 851 F.2d 134, 136 (6th Cir.1988), citing *Rhoton v. Central States, Southeast & Southwest*, 717 F.2d 988, 989–991 (6th Cir.1983). The Sixth Circuit reasoned that Congress's clear prohibition against misleading summary descriptions, and the resulting right of employees to rely on descriptions made, prevent an employer from relying on plan documents to the contrary. *Edwards*, 851 F.2d at 136. Under *Edwards*, Air Jamaica would be bound to the plan in its Handbook

even if its intended plan had been reduced to writing but not disclosed to employees.

Defendant seeks to avoid the result compelled by *Hozier* and *Edwards* by pointing to the Supreme Court's recent ruling in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Finding that ERISA "abounds with the language and terminology of trust law", 489 U.S. at 110, 109 S.Ct. at 954, 103 L.Ed.2d at 92, the Supreme Court in *Firestone* looked to trust principles to determine the standard of review for courts to apply in § 1132(a)(1)(B) actions. While ERISA provides for judicial review in these actions challenging an administrator's denial of benefits, it does not set out the applicable standard of review. Drawing from trust law, the Court determined that the standard of review would be *de novo*. 489 U.S. at 110–13, 109 S.Ct. at 954–955, 103 L.Ed.2d at 93–94. Defendant argues by the same logic that since "intent" is paramount under the law of trusts in determining how a trust is distributed, the "intent" of Air Jamaica regarding severance pay, and not the Handbook policy, should determine the parameters of Air Jamaica's severance pay plan.

This result is neither compelled by nor consistent with the logic of *Firestone*. The Supreme Court turned to trust principles in *Firestone* to fill a gap where ERISA was silent. *See* 489 U.S. at 108–10, 109 S.Ct. at 953, 103 L.Ed.2d at 91. With regard to writing and disclosure, ERISA is not silent and thus the gap-filling methodology of *Firestone* is inappropriate. Further, the actual holding of *Firestone* suggests the importance of favoring written instruments over parol evidence of intent.

Before the Supreme Court's ruling in *Firestone*, most federal courts applied an arbitrary and capricious standard of review to an administrator's denial of benefits. By rejecting this standard in favor of *de novo* review, the Court expressed its determination that ERISA's goal of protecting employee interests in benefit plans is fully served only if courts, and not plan administrators, are the ultimate arbiters over interpretation of plan terms. *See* 489 U.S. at 112–15, 109 S.Ct. at 955–56, 103 L.Ed.2d at 94. Judicial review over administrative decisions is a central component of ERISA's scheme for protecting employee interests. In the case at bar, Air Jamaica would have this court review a plan that was manifest only in the prior practice of the company and established only by the testimony of company officials. There is no evidence of bad faith by Air Jamaica in this case. Nevertheless, it is clear that the role assigned to the courts in *Firestone* is undermined any time there is no written evidence of intent for the court to interpret. *See Blau v. Del Monte Corp.*, 748 F.2d 1348, 1355–56 (2d Cir.1984) (refusing to refer to "secret" unwritten evidence of intent, including past practice, in interpreting appropriateness of a denial of severance benefits).

Employers cannot avoid ERISA by refusing to prepare any formal documents. *Donovan v. Dillingham*, 688 F.2d 1367, 1372 (11th Cir.1982). Where no plan documents exist, courts will have to look to other evidence to establish plan terms. Nevertheless, where an employer has published a plan document containing representation of intent to provide benefits, the employer cannot rely on evidence to the contrary.

### B. Violation of the Severance Pay Plan

Determining that the Handbook policy governed defendant's actions does not dispose of the case. Although it is not disputed that Air Jamaica failed to comply with the terms of the severance pay plan represented in the Handbook, the Handbook contained a disclaimer allowing Air Jamaica to modify the plan without notice. Air Jamaica's decision on May 25, 1990, to provide plaintiff with severance pay in accord with its time-honored formula and contrary to the representation of the Handbook was in effect a modification of the Handbook's severance pay plan. This modification was reinforced by Air Jamaica's written notification to all employees, amending the Handbook to reflect Air Jamaica's established pattern and practice regarding severance pay. Ultimate disposi-

tion of the action depends upon whether this modification was proper under ERISA and effective as to plaintiff.

### 1. Standard of Review

■ In *Firestone,* the Supreme Court held that the *de novo* standard applies unless the benefit plan gives the administrator discretionary authority to determine eligibility or construe terms of the plan. 489 U.S. at 113–15, 109 S.Ct. at 956, 103 L.Ed.2d at 95. Defendant argues that the benefit plan in question provides such discretionary authority. As evidence of this provision, defendant points to the disclaimer in the employee Handbook, in which Air Jamaica reserved the right "to alter, reduce, or eliminate any pay practice, policy or benefit ..." I decline to hold that the reservation of a power to amend a benefit plan constitutes the reservation of discretionary authority to interpret the terms of the plan. If employers were free to amend benefit plans at any time and under any conditions, the question of interpretation would be a nullity. Yet the right to amend under ERISA is not unbounded. *See infra,* section II(B)(2). Thus it is not incompatible under ERISA for an administrator to have a power to amend and not have the power to interpret plan terms when disputes arise. The Air Jamaica Handbook, by its plain terms, does not reserve the latter.

■ Yet even if a power to interpret was reserved to the plan administrator in this case, it would have little bearing on the decision. Defendant argues that it was not arbitrary for Air Jamaica to grant severance pay in accord with its past practice rather than in accord with the Handbook plan. However, the arbitrary and capricious standard in the context of ERISA connotes deferential review of a plan administrator's decision, not a substantive standard of liability. *Hozier,* 908 F.2d at 1168. ERISA requires a plan administrator to administer a plan "in accordance with the documents and instruments governing the plan". 29 U.S.C. § 1104. Thus the question is not whether Air Jamaica's decision to abandon the Handbook was ar-

bitrary, but whether the court should defer to Air Jamaica's interpretation of the Handbook plan. The facts are uncontroverted that Air Jamaica did not interpret the substantive provisions of the Handbook policy, but chose rather to amend them. At the core of the case are issues regarding power to amend benefit plans under ERISA that require an interpretation of the statute. Questions regarding interpretation of the plan document and legal standards for reviewing this interpretation are not controlling.

### 2. Right to Amend

■ ERISA requires that employees serving as administrators of benefit plans act as fiduciaries with respect to plan participants, discharging their duty "solely in the interest of [plan] participants and beneficiaries". 29 U.S.C. § 1104(a)(1). However, administrators assume their fiduciary obligations under ERISA only when serving in their capacity as plan administrators. *Hozier,* 908 F.2d at 1158. When deciding whether to provide benefit packages to their employees, and what benefits to provide, employers are not acting under the scope of ERISA, as ERISA does not require employers to provide any specific benefits. *See Hlinka v. Bethlehem Steel Corp.,* 863 F.2d 279, 283 (3rd Cir.1989). The Third Circuit, following the decisions of other federal circuits, has thus held that when an employer decides to amend or terminate an employee benefit plan, the employer is not acting as a plan administrator and is not constrained by fiduciary obligations. *Id.* at 1162. *See also Flick v. Borg–Warner Corp.,* 892 F.2d 285, 288 (3rd Cir.1989).

However, the Third Circuit in *Hozier* also recognized that an employer's power to amend a welfare benefits plan may not be wholly unrestricted. First, the court stated that employees are free to bargain for terms that bind an employer's ability to alter non-vested rights in benefits packages. *Id.,* at 1162. Second, the court stated, without deciding, that an amendment might be invalid if an employer fails to expressly reserve the power to amend, or

fails to notify employees of an amendment, or fails to follow other formalities mandated by ERISA. *Id.,* at 1162. Third, the court expressly held that amendments made orally are invalid if not reduced to writing prior to the vesting of rights that the amendments attempt to alter. *Id.,* at 1164.

### a. *Contractual Obligations*

Plaintiff argues that Air Jamaica is contractually bound to provide severance pay according to the terms of the Handbook. Plaintiff contends that the severance pay benefits were offered to plaintiff as part of a total compensation package, and as such were owed to plaintiff at the termination of his employment in accord with the employment agreement.

 State common law contract claims that relate to a benefit plan covered by ERISA are preempted. 29 U.S.C. § 1144(a). In an order issued on August 21, 1990, I dismissed plaintiff's breach of contract claim on this ground. However, the Supreme Court has stated that ERISA was designed to "protect contractually defined benefits", *Massachusetts Mutual Life Ins. Co. v. Russel,* 473 U.S. 134, 148, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985). Contract principles may thus control a claim under ERISA as a matter of federal common law. *See e.g. Bruch v. Firestone Tire & Rubber,* 828 F.2d 134, 147 (3rd Cir.1987) *aff'd in part and rev'd in part on other grounds,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80. If an employer and employee bargain for terms that bind the employer to pay certain benefits, those terms will be upheld. *See Hozier,* 908 F.2d at 1152; *Flick v. Borg–Warner,* 892 F.2d at 292 (Becker, J., concurring in part and dissenting in part).

 Here, there is no evidence that the parties agreed that Air Jamaica would be bound to the severance pay plan in the employee Handbook. Rather, the evidence is to the contrary that Air Jamaica did everything it could to disclaim any such obligation by including a reservation of rights in the Handbook and asking all employees to sign a form indicating that they read and understood this reservation. At trial, plaintiff's counsel made much of plaintiff's having refused to sign the disclaimer because he did not agree to the reservation. Whatever the effect of this refusal, it does not bind Air Jamaica to provide benefits as if the reservation were not present. ERISA does not provide employees with a line-item veto over their benefit packages. Defense counsel also noted plaintiff's failure to sign the disclaimer, arguing that it demonstrates plaintiff's refusal of the benefit package, making plaintiff a nonparticipant in the plan and unable to challenge its administration. This argument is equally implausible. The disclaimer and signature form was simply a device for Air Jamaica to ensure that its employees read and understood the terms of the benefits plan. Plaintiff's failure to sign has no bearing on whether plaintiff was a participant or how the plan is to be interpreted.

### b. *Formal Requirements of ERISA*

 The same section of ERISA that requires benefit plans to be maintained pursuant to a written instrument requires that the writing include a procedure for "amending such plan, and for identifying the persons who have authority to amend the plan". 29 U.S.C. § 1102(b)(3). At least one judge on the Third Circuit has suggested that this provision may restrict an employer's right to amend a severance pay plan, if an amendment procedure is not provided in the plan as required. *See Flick,* 892 F.2d at 291 (Becker, J., concurring in part and dissenting in part). Writing separately in *Flick,* Judge Becker argued that § 1102(b)(3) can be read as ERISA's analog to the trust principle that requires a settlor to expressly reserve a power to modify the terms of a trust if such a power is to be retained. 892 F.2d at 291. Judge Becker would thus have held in *Flick* that an attempted modification of a plan that did not contain a reservation of power to modify was invalid. The majority in *Flick* did not address the issue, finding it not properly presented for review. 892 F.2d at 288. Writing for the majority in *Hozier,* Judge Becker again referred to

this theory, but did not reach it. 908 F.2d at 1163.

Assuming arguendo that this theory would be adopted by the Third Circuit, it does not control this case. Although Air Jamaica did not set out in the Handbook a procedure for amending its benefit plans, as required by § 1102(b)(3), it clearly reserved the right to amend. Nothing in this case suggests any prejudice to plan participants stemming from an absence of knowledge about the specific procedures under which amendments would be made.

### c. *Timeliness of the Amendment*

▮▮▮ Given that Air Jamaica had a right to modify its benefits plan, the question remains whether the plan was properly modified with respect to plaintiff. In *Hozier*, the Third Circuit ruled that an amendment of a severance plan that was not reduced to writing before the termination of certain employees would have no effect with respect to these employees. 908 F.2d at 1164. The present case presents the situation of an amendment reduced to writing at or about the same time of plaintiff's termination. Although the memorandum circulating the amendment was dated May 30, 1989, one day before the effective date of plaintiff's termination, Air Jamaica did not realize its mistake or attempt to amend the Handbook until May 25, 1989, the day plaintiff was told of his termination and given the letter informing him of its terms. The issue, then, is whether *Hozier* requires that an amendment made around the time of termination, and after termination is announced, be found to be legally ineffective.

I find that it does. In *Hozier* the Third Circuit was concerned with the expectation and reliance interests of employees. The court specifically noted that the purpose behind ERISA's writing requirement is to provide employees the ability, "on examining plan documents", to determine their exact rights and obligations under a benefit plan. *Hozier*, 908 F.2d at 1163 (quoting H.Rep. No. 1280, 93rd Cong., 2d Sess. 297, *reprinted in* 1974 U.S.Code Cong. & Admin.News 5038, 5077–78). The court also recognized an "entitlement" of plan participants to rely on terms of written plans.

*Hozier*, 908 F.2d at 1163. Thus the court held that the unwritten amendment was ineffective at the time of termination because the employees were entitled to rely on the written plan and to expect to be paid accordingly. *See also Flick*, 892 F.2d at 291, n. 9 (Becker, J., concurring in part and dissenting in part) (discussing the right to amend a welfare benefit plan as depending on the employees' expectation and reliance interests).

Here, the written amendment to the severance plan was not made until after plaintiff was notified of his termination and immediately before the termination became effective. At the time he was notified of his termination, plaintiff expected to be paid according to the Handbook, which had not yet been amended to give him cause to expect otherwise. *Hozier* demands that this expectation be upheld.

Defendant argues that plaintiff should not be entitled to rely upon the Handbook because of the disclaimer that gives Air Jamaica the right to modify at any time without notice. Indeed, the written plan in *Hozier* apparently contained no similar reservation of right. *See Hozier*, 908 F.2d at 1163, n. 9. However, the Third Circuit explicitly declined to address the absence of a reservation of a right to modify in holding the oral amendment in that case to be invalid. *Id.* Further, since ERISA requires administrators to act in accord with plan documents only to the extent their terms are consistent with the provisions of the statute, 29 U.S.C. § 1104(a)(1)(D), Air Jamaica's disclaimer must be read in light of ERISA's goal of protecting employee interests in benefit plans. Read literally, the Air Jamaica disclaimer could be taken to mean that Air Jamaica is under no obligation at any time to award benefits in accord with its written promises. To the contrary, Congress enacted ERISA to provide security in benefit packages. *Hozier* stands for the rule that plan participants are entitled to rely, and to continue to rely, on an employer's current writings until those writings are in fact amended. That the employer gives itself the right to amend does not change this rule.

It is important to note that *Hozier* is not predicated on proof of actual reliance by plan participants. Indeed, in *Hozier,* the terms of the written plan were never disclosed to plan participants, *see* 908 F.2d at 1157, precluding any actual reliance on their part. *See also Edwards,* 851 F.2d at 137 (plan participants misled by summary description do not have to prove detrimental reliance in order to recover in accord with description). Similarly, *Hozier* is not predicated on the employer's failure to notify participants of the amendment. ERISA specifically provides that an employer must disclose any "material modification" in the terms of a plan "not later than 210 days after the end of the plan year in which the change is adopted". 29 U.S.C. § 1024(b)(1). The plaintiffs in *Hozier* asserted a claim under this notice provision. The Third Circuit declined to reach this claim, finding the amendment invalid instead under the § 1102(a)(1) writing requirement. *Hozier,* 908 F.2d at 1167.

That *Hozier* does not rest on actual notice or reliance may appear to lead to incongruous results, since the basis of the rule announced in *Hozier* is the protection of the reliance or expectation interests of plan participants. By its terms, *Hozier* invalidates all amendments to welfare benefit plans that are not reduced to writing before the vesting of participants' rights under the plan, whether or not the participants have been notified of or are aware of the original plan or the amendment. Similarly, *Hozier* would appear to uphold all amendments that are reduced to writing anytime before the vesting of participant rights, again regardless of whether the participants have been notified or are informed of the change. Indeed, since ERISA does not require disclosure of material amendments until 210 days after the end of the plan year in which the amendment was adopted, 29 U.S.C. § 1024(b)(1), there will necessarily be cases in which amendments to plans are made and rights under those plans vest before the plan administrator is required to have notified the participants of the change.

However, the apparent inconsistencies of the rule can be understood if viewed in context of the administrative scheme that ERISA requires to be created with regard to each benefit plan. ERISA dictates that plans be established with a formality not unlike that required of legislative acts. Plan documents are to be public, circulated in summary description to participants 29 U.S.C. § 1102(a), filed with the Secretary of Labor, 29 U.S.C. § 1024(a)(1), and made available for participant review, § 1024(b)(2). The rights and obligations of participants under the benefit plans are governed by terms of the documents as interpreted by the courts, *Firestone,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d at 95. *Hozier* adds to this scheme that documents control until superseded by valid amendments or new enactments. Amendments are valid if they comply with amendment procedures established in the plan, *see* 29 U.S.C. § 1102(b)(3), and are reduced to writing in the form required of the original plan, 29 U.S.C. § 1022(a)(1). The establishment and amendment of benefit plans are also subject to a panoply of reporting and disclosure rules, 29 U.S.C. §§ 1023, 1024., again analogous to the rules that govern the reporting of public acts.

Air Jamaica seeks to apply its amendment retroactively to plaintiff. Under the formal requirements and spirit of *Hozier,* this cannot be allowed. Plaintiff had actual notice and in fact expected to receive benefits in accord with the Handbook description. The Handbook was not amended until he was terminated. The original writing and not the amendment must control his case.

## III. *Vacation Pay Claim*

█ In contrast to resolution of plaintiff's severance pay claim, which depended primarily on determining matters of law, plaintiff's vacation pay claim turns entirely on findings of fact. Pennsylvania law requires that an employer pay an employee upon termination the full salary and vacation pay owed under the employment agreement. *See* 43 P.S. § 260.5. There is no dispute that the employment agreement between plaintiff and defendant required payment for unused vacation days. The

only dispute between the parties is over the number of days to which plaintiff was entitled.

Plaintiff offered two pieces of evidence in support of his claim for 26 days pay: his handwritten records, and a letter from management stating that plaintiff was entitled to the vacation pay demanded. Plaintiff admitted that in keeping his records he did not consider Air Jamaica's formula for determining the number of vacation days that could be carried over from one year to the next. Meanwhile, defendant established that the letter was in error, in that it failed to acknowledge that plaintiff was not entitled to a full allotment of vacation days for 1989. Plaintiff did not otherwise impeach defendant's bookkeeping procedure. Given these facts, I find that plaintiff has not carried his burden in establishing an entitlement to any more than the 12 vacation days that the Air Jamaica records showed to be owing. The vacation pay plan will be denied.